UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JACOB MEISELS,<br><br>          Plaintiff,<br><br>     v.<br><br>GP STRATEGIES CORPORATION, SCOTT N. GREENBERG, MARSHALL S. GELLER, RICHARD C. PFENNIGER, JR., STEVEN E. KOONIN, SAMUEL D. ROBINSON, TAMAR ELKELES, JACQUES MANARDO, and ADAM H. STEDHAM,<br><br>          Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jacob Meisels ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE AND SUMMARY OF THE ACTION**

1.    This is an action brought by Plaintiff against GP Strategies Corporation ("GP" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule

14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which GP will be acquired by Learning Technologies Group plc ("LTG") through LTG's subsidiaries Learning Technologies Acquisition Corporation ("US Holdco") and Gravity Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2. On July 15, 2021, GP issued a press release announcing that it had entered into an Agreement and Plan of Merger with LTG dated July 15, 2021 (the "Merger Agreement"). Under the terms of the Merger Agreement, GP stockholders will receive $20.85 in cash for each share of GP common stock they own (the "Merger Consideration"). The Proposed Transaction is valued at approximately $394 million.

3. On August 24, 2021, LTG filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that GP stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor Jefferies LLC ("Jefferies"); and (iii) potential conflicts of interest faced by Company insiders. Defendants authorized the issuance of the false and

misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.  In short, unless remedied, GP's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.  This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.  Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and

where the evidence exists. GP maintains office facilities in this District. Moreover, each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of GP.

9. Defendant GP is a Delaware corporation with its principal executive offices located at 70 Corporate Center, 11000 Broken Land Parkway, Suite 300, Columbia, Maryland 21044 and offices located at 3155 W. Big Beaver Road, Suite 300, Troy, Michigan 48084. GP is a global workforce transformation provider of organizational and technical performance solutions. GP's common stock trades on the New York Stock Exchange under the ticker symbol "GPX."

10. Defendant Scott N. Greenberg ("Greenberg") has been Chairman of the Board since August 2018 and a director of the Company since 1987. Defendant Greenberg previously served as Chief Executive Officer ("CEO") of the Company from April 2005 until June 2020, President of the Company from 2001 until 2006, Chief Financial Officer from 1989 until 2005, Executive Vice President from 1998 to 2001, Vice President from 1985 to 1998, and held various other positions since joining the Company in 1981.

11. Defendant Marshall S. Geller ("Geller") has been a director of the Company since 2002.

12. Defendant Richard C. Pfenniger, Jr. ("Pfenniger") has been a director of the Company since 2005.

13. Defendant Steven E. Koonin ("Koonin") has been a director of the Company since 2016.

14. Defendant Samuel D. Robinson ("Robinson") has been a director of the Company since 2016.

15. Defendant Tamar Elkeles ("Elkeles") has been a director of the Company since 2018.

16. Defendant Jacques Manardo ("Manardo") has been a director of the Company since 2018.

17. Defendant Adam H. Stedham ("Stedham") has been CEO of the Company since July 2020, and a director since 2020.

18. Defendants identified in paragraphs 10-17 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

19. LTG is a public limited company incorporated in England and Wales, with its principal executive offices are located at 15 Fetter Lane, London EC4A 1BW, United Kingdom. LTG is a leader in the high-growth workplace learning

and talent industry. It offers end-to-end learning and talent management solutions, from strategic consultancy, through a range of content and platform solutions, to analytical insights that enable corporate and government clients to close the gap between current and future workforce capability. LTG's common stock is traded on the London Stock Exchange's AIM under the ticker symbol "LTG.L."

20. US Holdco is a Delaware corporation and a direct wholly owned subsidiary of LTG.

21. Merger Sub is a Delaware corporation and a wholly owned subsidiary of US Holdco.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

22. GP is a leading workforce transformation partner, providing custom workforce performance solutions for all levels of an organization. GP's solutions include business consulting, leadership development, learning strategies & solutions, managed learning services, sales solutions, technology implementation & adoption solutions, and technical services. The Company operates three solution categories: organizational performance solutions, technical performance solutions and automotive performance solutions. GP provides managed learning services solutions spanning the full life-cycle of the training process, including the management of training departments and administrative processes for our

customers. The breadth of its service and product offerings, which encompass fully integrated managed learning services solutions as well as discrete services, allows it to better serve the needs of clients by providing them with a single-source solution for custom training, consulting and technical services.

23. On August 9, 2021, the Company announced its second quarter 2021 financial results. Revenue was $128.8 million compared to $106.1 million for the second quarter of 2020, or an increase of 21.3%. Gross profit was $23.8 million, or 18.5%, compared to $15.9 million, or 15.0%, for the second quarter of 2020. Net income was $2.5 million, compared to a net loss of $0.6 million for the second quarter of 2020. Earnings per share reached $0.14, compared to a net loss per share of $(0.04) for the second quarter of 2020.

**The Proposed Transaction**

24. On July 15, 2021, GP issued a press release announcing the Proposed Transaction. The press release states, in relevant part:

> COLUMBIA, Md., July 15, 2021 -- GP Strategies Corporation (NYSE: GPX), a global workforce transformation solutions provider, today announced it has entered into a definitive agreement to be acquired by Learning Technologies Group (AIM: LTG.L), a provider of services and technologies for digital learning and talent management, for $20.85 per GP Strategies share in cash, in a transaction valued at approximately $394 million. This transaction represents a premium of 40% over the volume weighted average closing price of GP Strategies shares over the past 180 days, 30% over the volume weighted average closing price over the past 60 days and 32% over the closing price on July 14, 2021, the last trading day prior

to this announcement. GP Strategies' Board of Directors has unanimously approved the transaction.

Together, Learning Technologies Group and GP Strategies will create one of the world's largest workforce transformation companies providing solutions to help organizations and their employees operate more effectively by delivering innovative and superior training, consulting, and business improvement services that are customized to meet its clients' needs. This transaction will also provide GP Strategies access to a larger client base, broader product and services offerings, and a larger global footprint, unlocking substantial value and growth opportunities driven by greater scale, diversity and balance across all products, services, and geographies.

"This transaction represents a tremendous opportunity for our customers and our talented employees to work with the global leader in workplace talent and learning, while providing our shareholders with a meaningful premium to our existing stock price," said Adam Stedham, Chief Executive Officer at GP Strategies. "This combination not only accelerates our growth strategy, but it will also bolster GP Strategies' best-in-class platform with complementary products and specialist services to drive successful and meaningful workforce transformation for our clients. Together, we will offer a customized, holistic tool kit to organizations at the forefront of workplace innovation all around the globe."

Mr. Stedham continued, "This agreement with Learning Technologies Group is a true testament to the many strengths of our organization, including our reputation in the industry, technical expertise and highly qualified workforce. This combination will position both companies for immediate success and long-term growth while providing GP Strategies shareholders with immediate and certain premium value."

"LTG has long admired GP Strategies and has been in regular contact with their management about a possible combination over the past few years, said Jonathan Satchell, Chief Executive of Learning Technologies Group. "I look forward to welcoming GP's teams and people, who are joining an exciting journey as we benefit from consolidation of the growing corporate learning and talent management industry."

> The transaction is expected to be completed during the fourth quarter of 2021, subject to GP Strategies shareholder approval, regulatory clearances, and other customary closing conditions. Upon closing of the transaction, GP Strategies will become a division of Learning Technologies Group and its shares will no longer be listed on the NYSE. The Company expects to continue to go to market with the GP Strategies brand and portfolio of offerings.
>
> Sagard Capital Partners Management, GP Strategies' largest shareholder, supports the transaction and has entered into a voting and support agreement to vote its shares in favor of the transaction, subject to customary terms and conditions.
>
> **Advisors**
>
> Jefferies LLC is serving as exclusive financial advisor and Hogan Lovells is serving as legal adviser to GP Strategies in connection with the transaction.
>
> Jefferies Sachs International is serving as exclusive financial advisor, Numis Securities Limited is serving as debt advisor and DLA Piper is serving as legal advisor to Learning Technologies Group in connection with the transaction.

**Insiders' Interests in the Proposed Transaction**

25.     GP insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of GP.

26.     Notably, GP insiders stand to reap substantial financial benefits for securing the deal with LTG.  Pursuant to the Merger Agreement, all outstanding

Company restricted stock units ("RSUs"), and performance-based restricted stock units ("PSUs") will vest upon closing of the merger. The following tables summarize the value of the RSUs and PSUs held by Company insiders:

| Name | Number of Shares of GP Strategies Common Stock Underlying GP Strategies RSUs(1) (#) | Cash Consideration Payable in Respect of GP Strategies RSUs(2) ($) |
|---|---|---|
| **Executive Officers** | | |
| Adam H. Stedham | 79,863 | 1,665,144 |
| Michael R. Dugan | 15,767 | 328,742 |
| Donald R. Duquette | 15,767 | 328,742 |
| Russell L. Becker | 16,556 | 345,193 |
| William J. Maggio | 9,435 | 196,720 |
| James L. Galante | 8,719 | 181,791 |
| Klaus Woeste | 15,284 | 318,671 |
| **Directors(3)** | | |
| Scott N. Greenberg | 15,192 | 316,753 |

| Name | Number of Shares of GP Strategies Common Stock Underlying GP Strategies PSUs(1) (#) | Cash Consideration Payable in Respect of GP Strategies PSUs(2) ($) |
|---|---|---|
| **Executive Officers** | | |
| Adam H. Stedham | 168,619 | 3,515,706 |
| Michael R. Dugan | 80,096 | 1,670,002 |
| Donald R. Duquette | 65,096 | 1,357,252 |
| Russell L. Becker | 77,059 | 1,606,680 |
| William J. Maggio | 54,087 | 1,127,714 |
| James L. Galante | 33,836 | 705,481 |
| Klaus Woeste | 51,302 | 1,069,647 |

27. Further, if they are terminated in connection with the Proposed Transaction, GP's named executive officers stand to receive substantial cash severance payments as set forth in the following table:

| Name | Cash(1) ($) | Equity(2) ($) | Perquisites/ Benefits(3) ($) | Total ($) |
|---|---|---|---|---|
| Adam H. Stedham | 714,000 | 5,180,850 | 59,814 | 5,954,664 |
| Scott N. Greenberg | 980,000 | 316,753 | 47,565 | 1,344,318 |
| Michael R. Dugan | 148,750 | 1,998,744 | 12,348 | 2,159,842 |
| Donald R. Duquette | 297,500 | 1,685,994 | 40,296 | 2,023,790 |
| Russell L. Becker | 148,750 | 1,951,873 | 15,486 | 2,116,109 |
| William J. Maggio | 120,000 | 1,324,434 | 20,160 | 1,464,594 |

**The Proxy Statement Contains Material Misstatements or Omissions**

28. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to GP's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed voting decision on the Proposed Transaction.

29. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's financial projections; (ii) the data and inputs underlying the valuation analyses performed by the Company's financial advisor, Jefferies; and (iii) potential conflicts of interest faced by Company insiders.

*Material Omissions Concerning the Company's Financial Projections*

30. The Proxy Statement omits material information regarding Company management's financial projections.

31. For example, with respect to GP's July 2021 Financial Forecasts, the Proxy Statement fails to disclose the line items underlying the Company's: (i)

Adjusted EBITDA; (ii) EBIT; (iii) After-Tax EBIT; and (iii) Unlevered Free Cash Flow.

32. Similarly, with respect to GP's April 2021 Financial Forecasts, the Proxy Statement fails to disclose the Company's (i) EBIT; (ii) After-Tax EBIT; and (iii) Unlevered Free Cash Flow, as well as the line items underlying the Company's Adjusted EBITDA.

33. The omission of this information renders the statements in the "Certain Unaudited Prospective Financial Information" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Jefferies' Financial Analyses***

34. The Proxy Statement describes Jefferies' fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Jefferies' fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, GP's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Jefferies' fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

35. With respect to Jefferies' *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of GP's estimated calendar year 2025

normalized, unlevered, after-tax free cash flows; (ii) quantification of GP's terminal values; (iii) quantification of the inputs and assumptions underlying the discount rates of 11.0% to 11.5%; and (iv) GP's net debt, net cash, and fully diluted outstanding shares utilized in the analysis.

36. With respect to Jefferies' *Selected Public Companies Analysis* and *Selected Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the companies and transactions observed, respectively.

37. With respect to Jefferies' *Equity Research* analysis, the Proxy Statement fails to disclose: (i) the individual price targets used in the analysis; and (ii) the sources thereof.

38. The omission of this information renders the statements in the "Opinion of Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Company Insiders' Potential Conflicts of Interest***

39. The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by GP insiders.

40. The Proxy Statement fails to disclose whether any of GP's executive officers or directors is continuing their employment following consummation of the Proposed Transaction, as well as the details of all employment and retention-

related discussions and negotiations that occurred between LTG and GP's executive officers, including who participated in all such communications, when they occurred and their content. The Proxy Statement further fails to disclose whether any of LTG's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

41. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

42. The omission of this information renders the statements in the "Background of the Merger" and "Interests of Directors and Executive Officers in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

43. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed

Transaction, Plaintiff and the other GP stockholders will be unable to make an informed voting decision on the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

44. Plaintiff repeats all previous allegations as if set forth in full.

45. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

46. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's financial projections, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Jefferies and potential conflicts of interest faced by Company insiders.

The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

47. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

48. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

49. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

50. Plaintiff repeats all previous allegations as if set forth in full.

51. The Individual Defendants acted as controlling persons of GP within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of GP, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly,

the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

52. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

54. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

55.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, GP's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of GP, and against defendants, as follows:

A.  Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to GP stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: September 10, 2021

**WEISSLAW LLP**

By /s/ Richard A. Acocelli
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*